Hitchcock, C. J.
This case was submitted to the court of common pleas without the intervention of a jury, and certain facts were agreed by the parties which were to be considered by the court as well as other evidence which might be of force. These facts and this evidence are all embodied in a bill of exceptions, which is.made a part of the record; and as the court of common pleas overruled a motion, made by the plaintiff, for a new trial, on the ground that the finding of the court was against the law and evidence of the case, the question is fairly presented, whether upon the facts the plaintiff was entitled to *106 recover, or whether the finding and judgment of the court of common pleas were right and proper. The land in controversy is upon Brush creek, in the county of Scioto. Both parties-claim title under patents issued by the President of the United States.
The matters in evidence in the court of common pleas,, show the following state of facts, as to the title of the respective parties: So far as the plaintiff’s title is concerned, it appears that on the 26th day of December, 1820, the heirs and representatives of Charles Stewart entered 300 acres of land, on a part of military warrant No. 6308. The entry was made on a branch of Doe run fork, of the east fork of the Miami, and is numbered 10561. Two hundred and forty acres of this entry appear to have been withdrawn. On the 19th of May, 1821,. 84 acres, as a part of entry No. 10561, was surveyed for the representatives of Charles Stewart, on the aforesaid warrant No. 6308, upon the waters of Brush creek, in the county of Scioto. This survey includes the land in controversy.
It will be seen that this survey does not include any part of the land appropriated by entry No. 10561, made on the 26th day of December, 1820. On the contrary, the entry and survey are upon lands in different parts of the district, in different counties, and many miles distant from each other. And it would seem that the first attempt which was made to appro priate this land, was by the survey executed in 1821. It is the same as if there had been no previous entry upon which the survey was made ; for surely an entry upon the waters of the east fork of the Little Miami, cannot be called in aid of a sur vey made upon the waters of Brush creek or of the Scioto.
The survey above referred to was recorded on the 29th day of March, 1826, and was carried into grant by patent to the lessor of the plaintiff as assignee of Stewart’s heirs. This patent-bears date 14th January, 1847. Such is the title of the plaintiff.
On the 9th of June, 1826, John Evans’s assignee entered the land in controversy on part of military warrant No. 6666. number of entry 12766.
*107 This entry was surveyed on the 10th of June, and the survey recorded on the 12th of June, 1826. There is no controversy but that the survey was in exact accordance with the entry. The entry in pursuance of which this survey was executed, was-made by or for the benefit of Andrew Ellison and Matthew L. Cook, and in April, 1827, said survey was, by patent, granted to the said Ellison and Cook. It further appears that the defendant was in possession of this land at the time Ellison and Cook caused entry No. 12766 to be made; that they caused it to be made for his benefit; that he has ever since remained in possession, claiming title; and that the title derived from the government by the patent to Ellison and Cook, is now actually vested in him. Such is the title of the defendant.
From the foregoing statement it is manifest that the title of the defendant is the elder legal title, and must prevail in a court of law, unless it is defective.
Several questions have been argued by counsel which, as it seems to me, are not of much or any consequence in the present situation of the case. Was this an application to the court, as a court of chancery, by the plaintiff to compel the defendant to release his legal title on the ground that the plaintiff .first acquired an interest in the land by an entry and survey anterior, in point of time, to the entry and survey under which the defendant claims, these questions would be of the first importance-They may be so in the present state of the case, but I do not perceive it. As before remarked, the defendant has an indisputable legal title, unless there is some defect in that title.
On the part of the plaintiff, it is claimed that the title of the defendant is not only defective, but that he has no title at all, and that the patent through which he claims is null and void, under the act of March 2d, 1807, or acts similar thereto which have been since enacted. This is true, provided the survey under which the plaintiff claims, was a survey which appropriated the land, and is within the meaning of the act referred to. For it must be remembered that survey was executed in 1821, and was, as far as we can see, subsisting at the time those under *108 whom the defendant claims made their entry and survey, and received their patent. If this survey of the plaintiff was a valid survey, one which in fact appropriated the land, no subsequent locator had any right to interfere with it, and if he attempted so to do, he could acquire no interest, even should he receive a patent. His entry, survey and patent, would be void.
It will not be pretended that by the statute of 1807, any survey was protected unless the same was legal, and subsisting at the time of the subsequent attempted appropriation of the land. Surveys upon warrants which were not granted for military services in the Virginia line upon continental establish ment, are not protected; for the holders of such warrants have no claim to have their warrants satisfied from lands between the Scioto and Little Miami rivers. Surveys upon such warrants would be void; and the proviso of the act of 1807 was never intended to protect void surveys. I suppose it will be unnecessary to cite authorities to prove this position. They are referred to, at least some of them, by counsel, and will appear from the argument. If the survey was valid at the time of its execution ; if afterwards and before a subsequent entry of the same land, it becomes invalid, as for instance, if the survey and the entry upon which it is based are withdrawn or abandoned, such survey is not protected by the provisions of the before recited act. If for any cause, no matter what, the survey is void, this act gives it no vitality, no protection. The act was intended for the protection of defective and irregular surveys, not of illegal and void ones.
It is contended, on the part of the defendant, that the survey under which the plaintiff claims was a void survey, and several reasons are assigned why it should be so considered. The first is that the survey was made without there having been any previous entry, and it is claimed that a survey made under such circumstances, was made without authority of law, and is therefore absolutely null and void.
This objection raises a very important question, and one upon the solution of which the court upon the circuit had *109 doubts, and therefore reserved the case for decision here. This question is, whether a survey, without any previous entry, is protected by the proviso of the act of March 2, 1809. We had hoped that the counsel would 'have been successful in find ing some case in which the point raised here had been directly decided, but no such ease is produced. The question presented depends upon another, and that is whether a survey so made is void, or whether it is merely voidable. Whether in fact such a survey is an appropriation of the land included within its limits.
I have always supposed that the first step to be taken in the appropriation of land within the military districts, was to make an entry or location with the principal surveyor of the district. Such is the law of Virginia, and the law of that state controls the subject, unless that law has been changed by some other power having jurisdiction over it; and I know of no such change. The same law provides that the holder of a warrant, or party interested therein, “ shall direct the location thereof so specially and precisely as that others may be enabled with certainty to locate other warrants in the adjacent residuums,” which location is to bear date the day on which it is made, and the surveyor is directed to enter it in a book to be kept for that purpose, “ in which there shall be left no blank leaves or space between the different entries.” The entry thus made vests in the warrant holder an interest in the land. It is in fact an appropriation of the land, and if special and precise, withdraws the land from subsequent location.” True, this is not considered as a legal interest. It is rather in the nature of an equity. And if a subsequent locator shall interfere with it, and pursue such course as to obtain a patent for the land, he will, in chancery, be considered as holding the legal title in trust for the rightful owner of the original efitry. A location or entry having been thus made, and placed of record, next follows the survey, and the mode of its execution is pointed out. It should be made within a reasonable time, and must be recorded. But this survey does not appropriate the land; it merely defines by metes, bounds,. *110 and visible or natural objects upon the ground itself, that which has been previously appropriated by location or entry upon the books of the surveyor. It is necessary that this survey should be executed, for otherwise no patent can be obtained. The equitable interest of the locator commences with the entry; his equity is merged in the legal title when the patent ■emanates.
Such being the course provided by positive law to enable an individual to acquire title to land in the military district, can a locator be protected, who, disregarding the law, at once makes a survey without any previous location? It seems to me that to so hold would be to encourage a disregard of the laws. Will it be said that this matter of making a location or entry upon the books of the surveyor is a useless ceremony ? It is not so. But if it were so, it is one of the terms which Virginia prescribed to her officers and soldiers, and without complying with which they were not entitled to receive any land upon their warrants. And surely their assignees are entitled to no more consideration than themselves.
But how have these surveys, made without any previous entry, or as in the present case, upon land other than that included in the entry, been considered by the courts ? In some instances patents have been issued upon such surveys, and where this has been done, the court would not look behind the patent unless there were some intervening claims. But in such case I apprehend that the interest of the party commences with the patent, not with the survey.
In the case of Willson v. Mason, 1 Cranch’s R. 45, the question as to the legality or validity of surveys made without any previous entry, came before the supreme court of the United States, and was settled by that court. It was a case in chancery from Kentucky. Chief Justice Marshall, in giving the opinion of the court, says, “ The title of Mason, if good, must be shown to be so, by establishing that a survey without .an entry is a sufficient foundation for a title.”
He then proceeds to say: “ With a view to discover whether *111 this question has been settled in Kentucky, all the adjudications ■contained in the books of reports furnished by the counsel for ‘the plaintiff in error, have been examined. It is not perceived -either that the question has been directly determined, or that any principles have been settled -which govern it. This case, then, is of the first impression.” He next examined the act of Virginia, with respect to the location of lands, which is the same 'law under which lands in the Virginia military district in Ohio are located, and then says, “It is apparent, throughout the whole act, that the legislature never contemplated a survey as being in itself an appropriation of lands, or supposed that one would ever be made, if not founded on a previous entry.”
Again, he says : “ From the circumstances under which the act for establishing the land office was passed, as well as from ■the expressions of that act, it is apparent that the entry was ■intended to give complete notice to other purchasers that the land located was already appropriated,” etc.
“ The regulations, therefore, respecting entries, are all calculated to make them as notorious as possible. Not so of surveys.”
“ The entries and surveys are to be kept in separate books. Why so, if a survey amounts to an entry ?”
“ The entry must be dated when made by the locator; but the time of recording the survey may appear or not, at the discretion of the surveyor. And a subsequent survey may be recorded before one of a prior date.”
“ There are to be no blanks in the book of entries, and this regulation is well calculated for the prevention of frauds in the origin of titles. It does not apply to the book of surveys.”
“ The book of entries is open to the inspection of every person. The book of surveys cannot be looked into but at the discretion of the surveyor.”
“ If a prior entry be alleged, the person affected thereby has a right to demand a copy thereof, but no copy of a survey can be given to any other than the proprietor, until twelve months after it shall have been made.”
*112 “From the whole act, a legislative intention to make an entry, and an entry only, the foundation of title to any particular tract of land, is strongly to be inferred; and if an equivalent act could be received, a survey does not appear to be such an act.”
Towards the close of the opinion, the Chief Justice says: “ It has been already stated to be the opinion of the court, that a survey, not founded upon an entry, is a void act, and constitutes no title whatever. Consequently the land so surveyed remains vacant, and liable to be appropriated by any person holding a land warrant.”
I have quoted more largely from this case than I should otherwise have done, because it was the first case in which the question was raised as to the legality of a survey without a previous entry; and it is fully decided that such survey does not appropriate the land within its boundaries, but is null and void; and further, that any warrant holder may subsequently appropriate the same land in satisfaction of his warrant. So far as I know, this decision has never been overruled, but is still considered as the law of the land. It has ever been held by this court to be the law in similar cases.
If such be the law, it follows as a necessary consequence that the survey .under which the plaintiff claims, and by which he would avoid the legal title of the defendant, is a void survey. It appropriated no land, and those under whom the defendant claims had a perfect right to locate their warrant upon the land included within the boundaries of that survey. The act of 1807 does not protect void surveys.
But it is said that the case before referred to, was decided under the law as it was before the act of 1807, and it seems to be thought that the supreme court of the United States would now decide differently. It may be so, but I can see no reason why a different decision should be made. The act of 1807 does not change the law relative to the manner of locating lands. It does not dispense with the necessity of an entry. It merely protects surveys which have already been made, about the va *113 lidity of which there might be some doubt in consequence of' irregularity.
Again it is claimed that, inasmuch as a patent has been issued upon the survey of the plaintiff, this court cannot go behind the patent to inquire into the validity of the survey.
It seems to us that this objection is not well taken. If we are concluded by the patent of the plaintiff, we ought to be-concluded by the patent of the defendant. But if we go behind the patent of the defendant to ascertain whether there was-a pre-existing survey in favor of some other person, and find such survey, we must inquire whether that survey was a valid, subsisting survey. For it is only a survey of that character which will defeat the title of the defendant.
Such being the opinion of the court, as to the legality of the plaintiff’s survey, it is unnecessary to examine the other objections which are raised to his title.
The judgment of the court of common pleas is affirmed with costs.